BENJAMIN KLEIN, receiver for Summit Sweets Shoppe, Incorporated, complainant,

*v.*

JOURNAL SQUARE BANK BUILDING COMPANY et al., defendants.

[Decided May 24th, 1932.]

*Messrs. Wright, Vander Burgh & McCarthy,* for the complainant.

*Messrs. McDermott, Enright & Carpenter,* for the defendant Journal Square Bank Building Company.

*Messrs. Connolly & Hueston,* for the defendant Paul Tutules.

FALLON, V. C.

The proofs herein disclose that on March 29th, 1930, a bill of complaint was filed in this court praying that the defendant therein named, Summit Sweets Shoppe, Incorporated, be adjudged insolvent and a receiver appointed therefor; that divers proceedings were had in said suit resulting in said defendant being adjudged insolvent and a receiver appointed therefor by decree dated April 7th, 1930; that on April 10th, 1930, a notice of appeal from said decree was filed in behalf of said defendant; that on April 17th, 1930, the court of errors and appeals made an order staying the operation of this court's said decree pending a determination of said appeal; that in and by its said order the court of errors and appeals directed the receiver aforesaid to restore to said defendant its property which the receiver had taken possession of; that said receiver forthwith complied with said order; that on October 21st, 1930, the court of errors and appeals dismissed said defendant's appeal and ordered that the aforesaid stay of the operation of this court's decree of April 7th, 1930, be vacated and the order therefor discharged (*Naspo* v. *Summit Sweets Shoppe, Inc., 106 N. J. Eq. 49;* docket 72, page 258); that shortly after the appointment of said receiver the Journal Square Bank Building Company, one of the defendants herein, and the lessor of the demised premises wherein the business of Summit Sweets Shoppe, Incorporated, is carried on, caused to be served on said receiver a notice (*Exhibit C-18*) by means of which it sought to terminate a lease dated February 15th, 1929, made between said company, as lessor, and Summit Sweets Shoppe, Incorporated, as lessee, for the alleged reason that said lessee had been decreed insolvent and a receiver appointed therefor by this court; that said lessor abandoned its aforesaid notice and its election mentioned therein that the aforesaid lease and the term of years thereunder should terminate and that the lessee should remove from the demised premises and surrender same to said lessor; that after said receiver had restored to said lessee the property which came to his possession, the lessor and lessee mutually arranged for payment by the lessee to

the lessor of a *daily* rental instead of a monthly rental as provided by said lease, and that the lessee continued in occupancy of the demised premises under such arrangement without interruption until a subsequent suit was instituted in this court against the said lessee which is hereinafter referred to. The decree of insolvency in the *Naspo* suit, *supra,* has been in full force and effect since the date of said decree— April 7th, 1930. The dismissal by the court of errors and appeals of the appeal from said decree operated, in law, as an affirmance of said decree. On August 15th, 1930, a bill of complaint was filed in this court in the suit of Philadelphia Dairy Products Company, Incorporated, against Summit Sweets Shoppe, Incorporated (docket 80, page 384), and the chancellor appointed the complainant herein as custodial receiver of the property of the defendant in said suit. On August 26th, 1930, the chancellor, by appropriate decree, adjudged said defendant insolvent and appointed the complainant herein statutory receiver for said defendant, and the complainant qualified as such and took possession of the property and place of business of said defendant. On September 29th, 1930, nearly six months after said defendant had been decreed insolvent in the *Naspo Case, supra,* a notice (*Exhibit C-1*) bearing said date, addressed to Summit Sweets Shoppe, Incorporated, and to Benjamin Klein, receiver of Summit Sweets Shoppe, Incorporated, signed "Journal Square Bank Building Company, by Henry R. Salvi, Sec'y," was served on the complainant herein. By means of such notice said company sought to terminate the leasehold interest of Summit Sweets Shoppe, Incorporated, and of the complainant herein as statutory receiver thereof, for the reason, as therein stated, that said lessee had been decreed insolvent by this court and a receiver had been appointed for its property in the aforesaid suit of *Philadelphia Dairy Products Co., Inc.,* v. *Summit Sweets Shoppe, Inc.,* and that because thereof the lessor required a surrender of said demised premises to it not later than October 3d, 1930. Such notice was not authorized by the lessor corporation; its board of directors did not take any action whatever with respect to

authorizing the giving of such notice; nor did said corporation-lessor empower its secretary as its agent to give such notice. Consequently such notice was ineffectual to accomplish its contemplated purpose and was of no legal significance. It is a maxim of the law that delegated power cannot be delegated, that the delegate cannot delegate, and that although the delegate may use others in the accomplishment of particular transactions which he directs, he cannot grant to the discretion of others that which was entrusted to his discretion. In view thereof and of the fact that the business affairs of a corporation are committed by law to the discretion of a board of directors, such board cannot, if it would, delegate its authority to a secretary. The aforesaid notice (*Exhibit C-1*) ostensibly was based on subdivision "g" of the *third* paragraph of said lease: "if the tenant shall at any time be adjudged a bankrupt or insolvent by any court decree or judgment, or a trustee in bankruptcy or receiver of any property of the tenant, including the term hereby granted or any of the rights hereby vested in the tenant, shall be appointed in any suit or proceeding brought by or against the tenant, as provided in paragraph 7 hereof on page 6 \* \* \* and upon the default of the tenant for thirty days to remedy the violation, the landlord, or its authorized agent, shall thereupon or at any time thereafter give written notice that this lease and the terms hereby granted are terminated, then and thereupon the term and estate thereby vested in the tenant shall immediately cease and expire \* \* \*," and on paragraph 7 of the lease (referred to in the above quotation) which provides: "That if at any time during the term herein demised, the tenant shall become adjudicated a bankrupt or shall compound its debts or assign over its effects for the payment thereof or if any execution shall issue against it or any of its effects and remain unsatisfied for sixty (60) days and shall not be stayed or bonded, or if a receiver or trustee shall be appointed for its property because of its insolvency, or if this lease shall, by operation of law, devolve or pass to any other person or corporation other than the said tenant, or its successors or assigns, then and in either of said cases,

this lease, shall, at the option of said landlord, cease and come to an end three (3) days after notice of such election shall be sent by registered mail addressed to said tenant at the premises herein demised * * *." As hereinabove mentioned a notice was served on the receiver in the *Naspo* suit, based on the clause of lease aforesaid, but such was *abandoned* by the lessor, and the lessor thereafter acknowledged a continuance of the leasehold interest of the lessee by not only tacitly acquiescing in the continuance of the relation of landlord and tenant but expressly arranged with the lessee to thereafter make payment of rent on a daily basis rather than on a monthly basis as in said lease provided, and the lessee continued in occupancy of the demised premises under said lease and made payment of rent thereunder on a daily basis to pay accruing rent and arrears of prior rents due and owing to lessor until the institution of the suit of Philadelphia Dairy Products Company, *supra*. The complainant, as receiver of the lessee Summit Sweets Shoppe, Incorporated, appointed as such in the last mentioned suit, forwarded checks to the lessor monthly for the payment of the rent payable *as per the terms of the lease* and the lessor retained such checks for several months before returning same to complainant, and then only upon the pretense that it considered complainant's right as receiver in and to said lease to be at an end. But that such was pretense only is manifest herein by the fact that the lessor, through its secretary, forwarded to complainant several demands in writing for the payment of the monthly rent provided in the lease (*Exhibit C-5* and *Exhibit C-6*) when the receiver was delinquent in promptly sending monthly check therefor. Messrs. Conway, Salvi and Skinner as a board of directors of the lessor company held board meetings at stated intervals, yet the minutes of said board do not record any action or resolution authorizing service on the complainant, as receiver aforesaid, of the notice which was served upon him on September 29th, 1930, purporting to effect a termination of the lease to which the notice referred. It is a well known rule of law that corporations can only act in corporate matters through their board

of directors, except in instances where the corporation has by appropriate means conferred special authority upon one or more of its officers to act in its behalf *intra vires*. Our courts have repeatedly held that in the absence of anything bestowing special power *intra vires* on officers of the corporation such officers have no control over or right to corporate property. Section 12 of our Corporation act provides that the business of every corporation shall be managed by its directors. In *Knopf* v. *Alma Park, Inc., 105 N. J. Eq. 299*, it was held that the management of corporate affairs is committed by law to the directors assembled in board meeting, and well established that the president of a corporation has no more authority over its property than any other director; citing *Titus & Scudder* v. *Cairo and Fulton Railroad Co., 37 N. J. Law 98; Stokes* v. *New Jersey Pottery Co., 46 N. J. Law 237; Holcombe* v. *Trenton White City Co., 80 N. J. Eq. 122; affirmed, 82 N. J. Eq. 364; Thomson* v. *Central Passenger Railway Co., 80 N. J. Law 328; Economy Auto Supply Co.* v. *Fidelity Union Trust Co., 105 N. J. Law 206.* In *Holcombe* v. *Trenton White City Co., supra,* it was held that the affairs of a corporation can be transacted only at a corporate meeting; that its powers can be exercised only by the coming together of the members who compose the directors; that its purposes or will can be expressed only by a vote embodied in some distinct and definite form; that the existence of the directors is as a board; and that each member of the board has the right of consultation with other members thereof, and the right to be heard upon all questions considered. In view of the foregoing rule of law why should it be assumed, as argued by counsel for the lessor, that the *secretary* of the lessor—even if it be regarded as true that he was directed by the president of another corporation which is said to own or control all of the capital stock of the lessor corporation—was authorized to give the lessee and complainant the notice which purported to effect a forfeiture of the lease in question. Authority so to do was not possessed by either of such officials *virtute officii*. It is a well known rule of law that directors must act as a board,

and that a single director, *virtute officii,* has no authority to act for the corporation; nor is the president or secretary of a corporation authorized to act for the corporation, unless specially empowered so to do. The proofs disclose that Mr. Frank Ferguson, as president of *Journal Square National Bank,* which is said to be the holding company for Journal Square Bank Building Company, the lessor hereinabove named, directed Henry R. Salvi, the secretary of said lessor, to serve on the complainant the notice aforesaid (*Exhibit C-1*), but Mr. Ferguson, as president of said bank, was not empowered to direct a termination of the lease in question by *officious* action upon his part, and officious it was notwithstanding it is claimed that the *executive committee* of the bank of which Mr. Ferguson was president authorized him to give such direction. The secretary of the lessor corporation was not empowered *ex officio* or *virtute officii* to act for the corporation in the service of the notice (*Exhibit C-1*). *Harris* v. *Congress Hall Hotel Co., 76 N. J. Law 367; Scott* v. *New York Filling Co., 79 N. J. Law 231.* There is no proof in the case *sub judice* that any power whatever was lawfully conferred upon the secretary in the premises. The termination of the lease in question—affecting as it does a property right, is a matter requiring sanction by the board of directors of the lessor corporation. It has been repeatedly held that the president of a corporation, although its executive head, is not empowered to bind the corporation in all of its business affairs. *Economy Auto Supply Co.* v. *Fidelity Union Trust Co., supra; Aerial League of America* v. *Aircraft Fireproofing Corp., 97 N. J. Law 530.* But even if it were to be regarded otherwise, Mr. Ferguson, upon whose order the secretary of the lessor corporation is said to have acted in the premises by the service of the aforesaid notice, was not the president of the lessor corporation, but of another and distinct corporation. Considerable testimony taken in this suit relates to conferences and negotiations between Messrs. Ferguson, Conway and Salvi, with the complainant herein, wherein complainant sought in his individual capacity to obtain a new lease of the demised premises for

another corporation in which he was interested. It would serve no useful purpose to comment herein upon such conferences and negotiations because they cannot militate against the interests of the creditors and stockholders of Summit Sweets Shoppe, Incorporated, of which complainant herein is this court's statutory receiver, and as such, the court's agent. The fact, if such it be, that the *Journal Square National Bank* is the holder of all the capital stock of the lessor corporation other than a few shares held by Messrs. Conway, Salvi and Skinner to qualify them to hold office as directors of such corporation, is of inconsequence in the matter *sub judice*. The fact that Mr. Henry R. Salvi, secretary of the lessor corporation was directed by Mr. Frank Ferguson, president of the *Journal Square National Bank,* to cause service upon the complainant herein of the notice (*Exhibit C-1*) which contemplated the termination of the lease in question, is likewise inconsequential. A director of a corporation acquires no additional authority to act for the corporation from the fact that he owns a majority of the corporate stock, and he has no authority, as director, to act for the corporation except in his place as a member of the board of directors. *Clement* v. *Young-McShea Amusement Co., 70 N. J. Eq. 677. A fortiori* the same rule of law is applicable to the *Journal Square National Bank* and its president notwithstanding such bank may own or control the entire capital stock. of the lessor corporation, *Journal Square Bank Building Company.* The bill of complaint charges and the proofs herein manifest that if the lessee of which complainant is statutory receiver was permitted to declare a forfeiture of the lease in question the creditors and stockholders of said lessee would suffer greviously. The assets of the lessee—an insolvent corporation, consisting of restaurant fixtures and kitchen utensils, the *lease* aforesaid, and the *good will* of the business of said corporation as a going concern, would have to be sacrificed if said lessor were permitted to declare a forfeiture of the lease and thus destroy the *good will* of the lessees' business as a going concern; and such person or corporation with whom the lessor might en-

ter into a new lease for the premises demised to the lessee aforesaid would be enabled to acquire the assets of the insolvent corporation by purchase at a nominal price, because the trade fixtures would be of no substantial value if removed from the demised premises. The *good will* of Summit Sweets Shoppe, Incorporated, may reasonably be regarded as of substantial value. The term *good will* imports and implies an advantage acquired by said corporation in the conduct of its restaurant and confectionery business upon the demised premises, principally from the flow of patronage to it from regular patrons as distinguished from transients. It would be inequitable to permit the lessor by means of forfeiture of lease to take away the lessee's *good will* of the business which the lessee has built up upon the demised premises. It is manifest from the proofs herein that complainant as statutory receiver has received offers of approximately $25,000 for the restaurant and confectionery business of the insolvent corporation as a going concern, together with the lease of the demised premises, and the good will of the business, and that he could have advantageously sold same if not interfered with by the activities of the defendant lessor in attempting to forfeit the lease. The *Naspo* suit, *supra,* disclosed that the lessee, Summit Sweets Shoppe, Incorporated, valued the lease in question at the sum of $50,000, and it was so represented to the court by counsel for the lessee corporation when said suit was heard and considered by the court, and in the reported case (*106 N. J. Eq. 49*—at *p. 50*) it is said: "It was reported to the court by counsel for the defendant a week ago when this matter was brought to the court's attention, that the defendant's lease for the premises now occupied by it and wherein the defendant's business is conducted was of the value of $50,000. I questioned counsel with respect thereto at the time, stating that I could hardly believe such lease was worth such a sum of money, but he ardently persisted in his insistment that it was worth that much money." The record in the *Naspo* suit was offered and admitted in evidence in the case *sub judice.* The proofs herein disclose an effort on the part of the aforesaid lessor to effect a new

lease with one Paul Tutules, a defendant herein, for an increased rent, predicated upon the lessor's ability to terminate the lease in question herein. Such proofs I consider to be of little significance in the matter *sub judice,* other than as indicative of the purpose of the lessor to enrich itself by inequitably endeavoring to take undue advantage of the lessee and the complainant as receiver for said lessee by means of voiding lessee's valuable lease. This court has undoubtedly inherent power to relieve against forfeitures, and I am of the opinion that the case *sub judice* is appropriately one in which the power of the court should be exercised in behalf of the complainant herein. Forfeitures are not favored in equity. If the defendant Journal Square Bank Building Company, were permitted to declare and effect a forfeiture of the lease in question herein the loss to creditors and stockholders of the lessee, Summit Sweets Shoppe, Incorporated, would, as hereinabove indicated, be grievous. It would be inequitable in my judgment to allow the defendant-lessor to declare and effect a forfeiture of such lease. Our courts have repeatedly held that a breach of a covenant of a lease will not ordinarily give the landlord the right to terminate same or the right of re-entry upon the demised premises. *North* v. *Jersey Knitting Mills, 98 N. J. Law 157; Levy* v. *Blackmore, 67 Atl. Rep. 1022; N. Windholz & Son* v. *Burke, 98 N. J. Eq. 471; Commercial Trust Co.* v. *L. Wertheim Coal and Coke Co., 88 N. J. Eq. 143* (at *p. 151*) ; *24 Cyc. 1364.* Inasmuch as equity does not favor forfeitures a court of equity will not, where a forfeiture is once waived, assist a lessor in a subsequent endeavor to enforce a forfeiture, and such rule of law I regard as applicable to the case *sub judice* wherein a forfeiture would be very harmful to creditors of the lessee. In *Fulton* v. *Greacen, 36 N. J. Eq. 216* (at *p. 223*), it is said: "Where the lease, in plain terms, provides that it shall be void, or become void, if the lessee fails to pay rent, *or keep any other covenant,* a breach does not render it *ipso facto* void, but merely gives the lessor a right to void it, which he may avail himself of or not, as he may chose to elect. A breach, in such case, renders the lease voidable, but not void,

and if the lessor, with notice of the breach, afterwards accepts rent, which accrued subsequent to the breach, the law understands his acceptance as a decisive and final election not to avoid the lease, but that it shall be continued."

I am of the opinion that judgment herein should be for the complainant and against the defendant Journal Square Bank Building Company, as per the prayer of complainant's bill, and that the bill, as to the defendant Paul Tutules, should be dismissed without costs. I will advise a decree accordingly.